UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

LARRY DOUGLAS NIXON,

                         Petitioner,

      v.

TIMOTHY WENGLER, et al.,

                        Respondents.

No. C09-5013FDB/KLS

**REPORT AND RECOMMENDATION**
**Noted for: August 21, 2009**

      This case has been referred to United States Magistrate Judge Karen L. Strombom pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4.   Petitioner Larry Douglas Nixon filed a 28 U.S.C. § 2254 habeas corpus petition related to his 2004 conviction. Dkt. 3.[1] Respondent filed an Answer (Dkt. 14) and submitted relevant portions of the state court record. Dkt. 15.   Petitioner filed a Reply. Dkt. 19.

      Having carefully considered the parties' filings and the record relevant to the grounds raised in the petition, the undersigned recommends that Mr. Nixon's habeas petition be denied and this action dismissed.

---

[1] Mr. Nixon amended the face page of his petition only to name his immediate custodian and the Washington Attorney General as respondents at Dkt. 7.

REPORT AND RECOMMENDATION - 1

# I. STATEMENT OF THE CASE

Mr. Nixon is a Washington State prisoner, incarcerated at the Prairie Correctional Facility in Appleton, Minnesota. Dkt. 7, p. 1. Mr. Nixon was found guilty by jury verdict on October 14, 2004 of one count of Unlawful Manufacture of A Controlled Substance, Methamphetamine, while armed with a deadly weapon – firearm, within 1000 feet of a school bus stop; and two counts of Unlawful Possession Of A Firearm in the Second Degree. Dkt. 15, Exh. 1. The trial court imposed a sentence of 128 months confinement on Count 1, and nine months confinement for each of the two counts of unlawful possession of a firearm in the second degree, with all counts to be served concurrently. *Id.*, pp. 4-5.

In the same trial, but under a different case number, Mr. Nixon was found guilty of one count of Possession of Psuedoephedrine With Intent to Manufacture Methamphetamine. *Id.*, Exh. 1(a). The trial court imposed a sentence of 68 months confinement to run concurrently with his 128 month sentence under his other Judgment and Sentence in Cause No. 04-1-1088-1. *Id*, p. 4.

## A. Factual Background

The Washington Court of Appeals summarized the facts of Mr. Nixon's crimes as follows:

> On April 27, 2004, a police officer stopped and arrested Nixon for driving with a suspended license. During the search incident to this arrest, the officer found three boxes of Sudafed among other items. By an amended information on April 30, the State charged Nixon with possession of pseudoephedrine with intent to manufacture methamphetamine.
>
> On June 7, police officers visited and searched the trailer where Nixon lived. He consented to a search. Based on the evidence they found in that search, the police obtained a search warrant in order to conduct a more thorough search of the trailer and surrounding area. During these searches, the police found evidence of the possession and manufacture of methamphetamine. The police also found firearms in the trailer.

REPORT AND RECOMMENDATION - 2

On June 9, the State charged Nixon with manufacturing methamphetamine while in possession of a firearm, unlawful possession of methamphetamine while in possession of a firearm, and two counts of unlawfully possessing a firearm. The State dismissed the methamphetamine possession while in possession of a firearm charge before trial.

Nixon did not move pretrial to suppress any evidence. A jury convicted him on all counts. It also entered special verdicts that he possessed a firearm while manufacturing methamphetamine and that he manufactured methamphetamine within 1,000 feet of a school bus stop.

The trial court sentenced Nixon within the standard range of 68 months on the manufacturing methamphetamine conviction and 9 months each on the two unlawful firearm possession convictions, to run concurrently. The court added a 36 month firearm enhancement and a 24 month school bus stop enhancement to the 68 month standard range sentence for a total 128 months' confinement.

Dkt. 15, Exh. 5 (Washington Court of Appeals Cause Nos. 32681-7-II and 32688-4-II, consolidated at 1-2.

**B.    Procedural History**

Counsel for Mr. Nixon filed a notice of appeal of his Superior Court convictions. Dkt. 15, Exh. 2 (Washington Court of Appeals Cause No. 32688-4-II). On June 22, 2005, counsel for Mr. Nixon filed a brief of appellant in Washington Court of Appeals Cause No. 32681-7-II, raising the following issues for review:

1) Whether the trial court erred in failing to suppress evidence from the unlawful warrantless search of the vehicle incident to Nixon's arrest for driving while license suspended?

2) Whether the trial court erred in allowing Nixon to be represented by counsel who provided ineffective assistance in failing to raise the suppression issues?

3) Whether the trial court erred in failing to take Nixon's unlawful possession of pseudoephedrine with the intent to manufacture methamphetamine charge from the jury for lack of sufficient evidence?

4) Whether the trial court erred in sentencing Nixon to 128-months, beyond the statutory maximum of 120-months where RCW 69.50.408's doubling provision did not apply as Nixon did not have a prior conviction for a drug offense?

REPORT AND RECOMMENDATION - 3

5) Whether the trial court erred in permitting Nixon to be represented by counsel who provided ineffective assistance by failing to argue that Nixon was sentenced beyond the statutory maximum?

Dkt. 15, Exh. 3, pp. 1-2. On March 14, 2006, the Washington Court of Appeals affirmed Mr. Nixon's judgment and sentence. *Id.*, Exh. 5 (Unpublished Opinion, Cause Nos. 32681-7-II and 32688-4-II). On April 25, 2006, the Washington Court of Appeals entered a mandate. *Id.*, Exh. 6. Mr. Nixon did not appeal the Washington Court of Appeals decision to the Washington Supreme Court.

On September 29, 2006, Mr. Nixon filed a personal restraint petition in the Washington Court of Appeals. *Id.*, Exh. 7 (Cause No. 35510-8). Mr. Nixon raised the following grounds for relief in his personal restraint petition:

1) The jury was not required to be unanimous when they gave me a weapon enhancement.

2) The trial court relied on insufficient evidence to impose a firearm enhancement.

3) The trial court exceeded its authority when it impose (sic) community custody of an undetermined amount.

4) The three enhancements that I received exceeded by statutory maximum sentence as defined by Blakely.

Dkt. 15, Exh. 7. On September 20, 2007, the Acting Chief Judge for the Washington Court of Appeals issued an order dismissing Mr. Nixon's personal restraint petition. *Id.*, Exh. 10. On November 13, 2007, Mr. Nixon filed a motion for discretionary review in the Washington Supreme Court. *Id.*, Exhibit 11. In his motion for discretionary review, Mr. Nixon raised the following issues:

1) Did the court violate Mr. Nixon's Sixth and Fourteenth Amendment rights of the United States Constitution and Article I § 3, Article 1 § 21, and Article 1 § 22 of the Washington Constitution to a fair trial, a trial by a jury, and due process when the jury was not required to be unanimous?

REPORT AND RECOMMENDATION - 4

2) Did the court violate Mr. Nixon's Fifth, Sixth and Fourteenth Amendments of the United States Constitution when the court relied on insufficient evidence to impose a firearm enhancement?

3) Did the court violate Mr. Nixon's Fifth, Sixth and Fourteenth Amendments of the United States Constitution when it imposed a firearm enhancement, school zone enhancement, and community custody exceeding Mr. Nixon's statutory maximum?

*Id.*, Exh. 11, p. 1. The Washington Supreme Court Commissioner entered a ruling denying review on June 9, 2008. *Id.*, Exh. 12. Mr. Nixon then filed a motion to modify the Commissioner's ruling. *Id.*, Exh. 13. The Chief Justice for the Washington Supreme Court denied Mr. Nixon's motion to modify the Commissioner's ruling on November 7, 2008. *Id.*, Exh. 14. The Washington Court of Appeals entered a certificate of finality on March 27, 2009. *Id.*, Exh. 15.

## II. ISSUES FOR FEDERAL HABEAS REVIEW

Mr. Nixon lists the following issues as grounds for relief in his federal habeas corpus petition:

1) Trial court violated Nixon's 5th, 6th, and 14th amendment rights. Jury was confused and misled by court's instructions; prosecution was aware of this misconduct; jurors admitted confusion and misinterpretation of the law and instructions; jurors admitted they were not unanimous on firearm enhancement; enhancement should not have been put before the jury.

2) Trial court violated Nixon's 5th, 6th, and 14th amendment rights. Prosecution did not prove nexus between firearm and crime; firearm was not easily accessible or readily available; firearm was not defensive type but was of the recreational type; insufficient evidence.

3) Trial court violated Nixon's 5th, 6th, and 14th amendment rights. Trial court violated constitutional rights by imposing sentence exceeding standard range and statutory maximum; petitioner was not informed that he was facing an exceptional sentence; enhancement and doubling statute double duty.

Dkt. 3, 5-6, 8. (CM-ECF pagination).

REPORT AND RECOMMENDATION - 5

# III. EVIDENTIARY HEARING

The decision to hold a hearing is committed to the court's discretion. *Williams v. Woodford*, 306 F.3d 665, 688 (9th Cir. 2002).    State court findings are presumptively correct in federal habeas corpus proceedings, placing the burden squarely on the petitioner to rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief.  *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).  Because the deferential standards prescribed by § 2254 of the Antiterrorism and Effective Death Penalty Act (AEDPA) control whether to grant habeas relief, a federal court must taken into account those standards in deciding whether an evidentiary hearing is appropriate.  *Id.*

An evidentiary hearing is not required where the petition raises solely questions of law or where the issues may be resolved on the basis of the state court record.  *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).  The petitioner must demonstrate that an evidentiary hearing would materially advance his claims and explain why the record before the court, or an expanded record, is inadequate for review.  *Totten*, 137 F.3d at 1176-77; see also Rule 8 of the Rules Governing  2254 Cases.  It is not the duty of the state court to ensure that the petitioner develops the factual record supporting a claim.  *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (citing *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994)); see also *Baja v. DuCharme*, 187 F.3d 1075, 1079 (9th Cir. 1999); *In re Rice*, 118 Wash.2d 876, 884, 828 P.2d 1086, cert. denied, 506 U.S. 958 (1992).

The Court finds that an evidentiary hearing is not required in this case as Mr. Nixon's habeas claims are matters that can be resolved by reference to the state court record.  His habeas

claims raise purely issues of law, rather than factual disputes, and therefore, an evidentiary

hearing to resolve questions of fact, is not necessary to resolve his claims.

## IV.  STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a

constitutional dimension.  *Engle v. Isaac*, 456 U.S. 107 (1983).  Pursuant to the federal habeas

statute for state convictions, a federal court may entertain an application for writ of habeas

corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or

law or treaties of the United States."  § 2254(a)(1995).  The Supreme Court has repeatedly held

that federal habeas corpus relief does not lie for errors of state law.  *Estelle v. McGuire*, 502 U.S.

62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In a habeas corpus petition, the Antiterrorism and Effective Death Penalty Act of 1996

(AEDPA) establishes the district court's standard of review of the state court's decision.  *Barker

v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005).  Under AEDPA, a federal court cannot grant a

writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in

state court unless the state court's adjudication of the claim:

>      (1)  resulted in a decision that was contrary to, or involved an
> unreasonable application of, clearly established Federal law, as determined by the
> Supreme Court of the United States; or
>
>      (2)  resulted in a decision that was based on an unreasonable determination
> of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA standard of review "demands that state-court decisions be given the benefit

of the doubt."  *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's

"clearly established precedent if the state court applies a rule that contradicts the governing law

REPORT AND RECOMMENDATION - 7

set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06). A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). As noted above, however, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

REPORT AND RECOMMENDATION - 8

# V. DISCUSSION

## A. FIRST CLAIM FOR RELIEF – UNANIMOUS FIREARM ENHANCEMENT VERDICT

Mr. Nixon's first claim for habeas relief is essentially two-fold: (1) that the jury was confused and misled by the court's instructions, and (2) that the jurors were not unanimous on the firearm enhancement special verdict. Dkt. 3, p. 5. (CM/ECF pagination). Respondent argues that Mr. Nixon failed to present the first part of this claim to the Washington Court of Appeals and it is therefore, unexhausted and cannot form the basis of federal habeas relief. Furthermore, Respondent argues that this portion of Mr. Nixon's claim is procedurally barred because he has already filed a personal restraint petition in the Washington State courts regarding his habeas claims.

The Court turns first to Respondent's argument that Mr. Nixon has failed to exhaust that portion of his first habeas claim that his due process rights were violated because the jury was confused and mislead by the jury instructions.

### 1. Exhaustion – Instructions were "Confusing and Misleading"

Mr. Nixon states that Instruction No. 20 was "confusing and misleading," and based on that confusion, the jury "in reality, did not return a unanimous guilty verdict because there were at least three jurors who thought Petitioner was not guilty of the weapon enhancement. But because they did not understand they had an alternative of finding Petitioner guilty of manufacturing only, they voted guilty." Dkt. 3-2, pp. 2-4.

Respondent argues that Mr. Nixon did not exhaust this portion of his claim because he did not raise it in the Washington Court of Appeals. Dkt. 14, p. 7. At that time, he argued only

that the jury was not required to be unanimous when he was given a firearm enhancement. Dkt. 14, p. 7.

In its order dismissing Mr. Nixon's personal restraint petition, the Washington Court of Appeals expressly noted that Mr. Nixon did not challenge the trial court's original or supplemental instructions to the Court. Dkt. 15, Exh. 10, p. 4. Later, in the Washington Supreme Court, Mr. Nixon challenged both the lack of jury unanimity and the firearm enhancement jury instructions. Dkt. 15, Exhs. 7 and 11. However, because state prisoners are required to raise every issue on all levels of direct review, *see, e.g., Ortberg v. Moody*, 961 F.3d 135, 138 (9th Cir. 1992), Respondent argues that the jury instruction claim is unexhausted for purposes of this federal habeas proceeding because it not fully and fairly presented to the Washington Court of Appeals, even though Mr. Nixon may have presented it to the Washington Supreme Court. Additionally, Respondent argues that Mr. Nixon is now barred from filing a personal restraint petition in the Washington State courts if he now attempts to properly exhaust his jury instruction claim in the Washington State courts, based on RCW 10.73.090.[2]

A state prisoner must exhaust state remedies with respect to each claim before petitioning for a writ of habeas corpus in federal court. *Granberry v. Greer*, 481 U.S. 129, 134 (1987).

28 U.S.C. § 2254 (b)(1) states, in pertinent part, that:

(b)(1) An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted unless it appears that—
(A) the applicant has exhausted the remedies available in the courts of the State; or
(B)(i) there is an absence of available State corrective process; or

---

[2] As noted above, the Washington Court of Appeals entered a mandate in Mr. Nixon's case on April 25, 2006. Dkt. 15, Exh. 6. Because Mr. Nixon has already filed a personal restraint petition in the Washington State courts regarding his habeas claims, he would be procedurally barred from doing so in the future absent a showing of good cause. RCW 10.73.140 and Dkt. 16, Exhs. 7-10.

REPORT AND RECOMMENDATION - 10

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28. U.S.C. § 2254 (b)(1) (Emphasis added.)

Claims for relief that have not been exhausted in state court are not cognizable in a federal habeas corpus petition. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1993), cert. denied, 513 U.S. 935 (1994). The exhaustion doctrine is based upon comity, not jurisdiction. *Rose v. Lundy*, 455 U.S. 509, 518 (1982). It is the petitioner's burden to prove that a claim has been properly exhausted and is not procedurally barred. *Cartwright v. Cupp*, 650 F.2d 1103, 1104 (9th Cir. 1981).

A claim must be "fully and fairly" presented to the state's highest court so as to give the state courts a fair opportunity to apply federal law to the facts. *Anderson v. Harless*, 459 U.S. 4 (1982); *Picard v. Connor*, 404 U.S. 270, 276-78 (1971). The petitioner must present the claims to the state highest court even where such review is discretionary. *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999). Each claim must be presented to the state's highest court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted in federal court. *Hudson v. Rushen*, 686 F.2d 826, 829-30 (9th Cir. 1982), cert. denied, 461 U.S. 916 (1983).

Petitioners must fairly present their federal claims to state courts in order to give the State the opportunity to pass upon and correct alleged violation of its prisoners' federal rights. If the state courts are to be given the opportunity to correct alleged violations of prisoners' federal rights, they must surely be alerted to the fact that the prisoners are asserting claims under the United States Constitution. See *Duncan v. Henry*, 513 U.S. 364, 365-366 (1995) (citing *Picard v. Connor*, 404 U.S. 270, 275 (1971), internal quotation marks omitted); see also, *Keeney v. Tamayo-Reyes*, 504 U.S. 1, 10 (1992) (exhaustion must be "serious and meaningful"). In order to

REPORT AND RECOMMENDATION - 11

exhaust a habeas claim, a petitioner must properly raise it on every level of direct review. *Ortberg v. Moody*, 961 F.2d 135, 138 (9th Cir. 1992).

Vague references to broad constitutional principles such as due process, equal protection and a fair trial do not satisfy the exhaustion requirement. *Gray v. Netherland*, 518 U.S. 152, 162 (1996); *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir. 1999); *Gatlin v. Madding*, 189 F.3d 882, 888 (9th Cir. 1999), cert. denied, 120 S. Ct. 815 (2000). "[A] claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts which entitle the petitioner to relief." *Gray*, 518 U.S. at 163. Even where the petitioner argues an error deprived him of a "fair trial" or the "right to present a defense", unless the petitioner expressly states he is alleging a specific federal constitutional violation, the petitioner has not properly exhausted the claim. *Johnson v. Zenon*, 88 F.3d 828, 830-31 (9th Cir. 1996).

The fact that a state law claim was "essentially the same" as the claim subsequently asserted in federal court does not satisfy the exhaustion requirement. *Id*. at 830. Citation to Washington case law, even if the case applied a standard similar to the federal standard, does not suffice to apprise the Washington courts of a federal claim. *Hiivala*, 195 F.3d at 1106-07. For purposes of exhausting state remedies, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief. *Gray*, 518 U.S. at 162-63. Although exhaustion of state remedies under AEDPA does not require that a habeas petitioner present to the state courts every piece of evidence supporting his federal claims in order to satisfy the exhaustion requirement, a claim for relief in habeas corpus must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief. *Davis v. Silva*, 511 F. 3d 1005, 1008 (9th Cir. Jan. 2, 2008).

REPORT AND RECOMMENDATION - 12

In his brief in support of his personal restraint petition in the Washington Court of Appeals, Mr. Nixon argued that the State violated his Sixth and Fourteenth Amendment rights of the United States Constitution when the jury was not required to be unanimous, and he argued that the jury was confused about the enhancement, but he did not present his jury instruction claim as a federal constitutional violation:

> [T]he jury was confused about the enhancement for the firearm.
>
> The jury members sent up a question stating that they did not understand the instruction, concerning the firearm enhancement.
>
> After the finding of guilty in the petitioner's case, Mr. Smith, a J.A. was with three (3) jurors who stated that they did not understand that they could have said petitioner was not armed with a wepaon [sic] while he was committing the crime, manufacturing methamphetamine. (See Appendix C, RP of Sentencing at 4).
>
> The prosecutor was aware of this confusion. (See Appendix C, RP of Sentencing at 4).
>
> The prosecutor then stated as an officer of the court that there was one juror that basically said, "I misunderstood the law." Had I understood the law, I would have found differently on this particular question. (See Appendix C, RP of Sentencing at 7).
>
> For the above stated reason, the petitioner requests this court to grant his petition and vacate his judgment of the firearm enhancement and vacate his judgment of the firearm enhancement and remand back to the trial court for resentencing.

Dkt. 15, Exh. 7, p.p. 9-10. [3]

In its Order dismissing Mr. Nixon's petition, the Washington Court of Appeals stated:

---

[3] A review of the decisions relied on by Mr. Nixon in his personal restraint petition do not lead one to conclude that he was challenging anything more than the jury's unanimity before the Washington Court of Appeals. Mr. Nixon relied on *Bruton v. U.S.*, 391 U.S. 123 (1968) (limiting instructions on use of a defendant's confession implicating co-defendant are not adequate substitute at joint trial); *U.S. v. Gomez-Lepe*, 207 F.3d 623 (9th Cir. 2000) (to ensure verdict is verdict of all jurors, federal rules provide opportunity to poll the jury, citing Fed.R.Crim.P. 31(d)); *Mach v. Stewart*, 137 F.3d 630 (9th Cir. 1997) (6th Amendment right to jury trial guarantees criminally accused a fair trial by panel of impartial 'indifferent' jurors).

REPORT AND RECOMMENDATION - 13

The superior court polled the jury when it returned its verdicts. TRP 261-66. The verdicts were unanimous. TRP 261-66. Before sentencing, Petitioner's lawyer moved for a new trial only on the firearm enhancement. SRP [2] 3-8. She explained that three of the jurors misunderstood the court's instructions, believed the enhancement vote had to be unanimous, and would have voted "no" if they had known they could reject the enhancement with a divided vote.[3] SRP 4. The prosecutor confirmed that at least one juror said he or she would have voted differently had the juror understood the law. SRP 5-6, 7. Petitioner's lawyer sought new trial based on the theory that this misunderstanding affected the jury's verdict. She did not challenge the superior court's instructions or the court's response to a jury question regarding the firearm enhancement special verdict form. The trial court denied the motion. SRP 8.

JURY VERDICT

Petitioner first argues that the jury did not return a unanimous firearm enhancement verdict. But the verdict was unanimous. TRP 261-66. In substance, however, Petitioner appears to be challenging the verdict itself based on the post-trial statements of individual jurors about how and why they voted "yes" on the enhancement special verdict. That is, he is now raising the juror misconduct argument that his lawyer unsuccessfully made in the superior court. And similarly, **Petitioner does not challenge the court's original or supplemental instructions regarding the firearm enhancement, and neither party has provided those instructions to us.**

But Petitioner cannot impeach or challenge the enhancement verdict by using the jurors' statements about the reasons and thought processes that led them to vote "yes" instead of "no"; the reasoning of the jurors inheres in the verdict and cannot be used to challenge that verdict. *See, e.g., State v. Ng*, 110 Wn.2d 32, 43-44, 750 P.2d 632 (1988). And specifically, "any evidence that a juror misunderstood or failed to follow the court's instructions inheres in the verdict and may not be considered." *State v. Rooth*, 129 Wn. App. 761, 722, 121 P.3d 755 (2005); *Accord State v. Young*, 48 Wn. App. 406, 414, 739 P.2d 1170 (1987); *see Ng*, 110 Wn.2d at 43-44. This ground lacks merit.

[2]"SRP" is an abbreviation for the sentencing verbatim report of proceedings. [Internal footnote by Washington Court of Appeals.]

[3]Of course, requiring a unanimous verdict does not prevent individuals from refusing to join the majority, thereby preventing a unanimous verdict with which the dissenting jurors do not agree. Based on the scant record here, it appears that the three jurors initially believed the enhancement had not been proved and would have voted "no" if they had known a non-unanimous acquittal verdict was possible. *See State v. Golberg*, 148 Wn.2d 888, 893-94, 72 P.3d 1083 (2003). During deliberation, these jurors then changed their votes to "yes," instead of continuing to hold out. Petitioner's lawyer challenged the verdict based on the

REPORT AND RECOMMENDATION - 14

jurors' post-verdict explanation of why they voted "yes." [Internal footnote by Washington Court of Appeals.]

Dkt. 15, Exh. 10, pp. 4-5 (emphasis added).

In his motion for discretionary review before the Washington Supreme Court, Mr. Nixon argued that the "instructions were obviously not clear. There were two instruction[s] 20. Both instructions were ambiguous concerning firearms…. The petitioner was trying to challenge the instructions also." Dkt. 15, Exh. 11, pp.3-4.

In denying review, the Washington Supreme Court held:

> Mr. Nixon first contends the firearm special verdict is invalid because some of the jurors expressed confusion about whether unanimity was required to reject the enhancement. But the final verdict in favor of the enhancement was unanimous. The jurors' reasoning inheres in that verdict and cannot be used to challenge it. *State v. Ng*, 110 Wn.2d 32, 43-44, 750 P.2d 632 (1988); *State v. Rooth*, 129 Wn. App. 761, 772, 121 P.3d 755 (2005).

Dkt. 15, Exh. 12, p. 1.

Although he attempted to raise the issue before the Washington Supreme Court, to give the Washington state courts an opportunity to properly address his jury instruction claim, Mr. Nixon would have had to present it has a federal constitutional violation at every level of Washington state courts' review. *See Ortberg v. Moody,* 961 F.2d 135, 138 (9th Cir. 1992) (a petitioner must properly raise a habeas claim on every level of direct review in order to properly exhaust).

Therefore, that part of Mr. Nixon's first claim in which he alleged a due process violation based on confusing jury instructions was not fully and fairly presented to the Washington Court of Appeals and is unexhausted for purposes of this federal habeas case.

REPORT AND RECOMMENDATION - 15

**(a) Dismissal of Unexhausted Claim and Adjudication of "Mixed" Petition Not Required When Petitioner is Procedurally Barred From Returning to State Court**

As a portion of his first habeas claim regarding confusing jury instructions has not been fully exhausted, the Court is presented with a mixed petition containing both exhausted and unexhausted federal claims, which, in itself requires dismissal of the petition. Federal courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber,* 125 S. Ct. 1528, 1532-33 (2005). Instead, such petitions "must be dismissed for failure to completely exhaust available state remedies." *Jefferson v. Budge,* 419 F.3d 1013, 2005 WL 1949886 *2 (9th Cir. 2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518-22 (1982)).

Before dismissing the petition, generally the Court is required to provide a petitioner with "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.; see also Rhines*, 125 S. Ct. at 1535; *Tillema v. Long*, 253 F.3d 494, 503 (9th Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by striking unexhausted claims). However, when a petitioner would be procedurally barred from returning to the state court to address the unexhausted claims, the Court need not provide Petitioner with this choice.

In this case, the record reflects that Mr. Nixon is now procedurally barred from presenting his unexhausted claim to the Washington State courts. Pursuant to RCW 10.73.090(1), no petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final. The Washington Court of Appeals issued its mandate in Mr. Nixon's case on April 25, 2006. Mr. Nixon is now time-barred from filing a personal restraint petition in Washington state courts to properly exhaust his first habeas claim. RCW 10.73.090 and Dkt. 16, Exh. 6. Because Mr. Nixon has already filed a

REPORT AND RECOMMENDATION - 16

personal restraint petition in Washington State courts, he will also be procedurally barred from filing another such petition unless he can show good cause and prejudice or actual prejudice.

Only if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," will he be entitled to federal *habeas corpus* review. *See Boyd v. Thompson,* 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. 722 at 750.

### (b) Petitioner Cannot Show Cause and Actual Prejudice To Overcome Procedural Default

To satisfy the "cause" prong, petitioner must show that "some objective factor external to the defense" prevented him from complying with the state's procedural rule. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Objective factors constituting "cause" include "interference by officials" making compliance with the procedural rule impracticable, as well as "a showing that the factual or legal basis" for the claims "was not reasonably available." *Id*. at 493-94 (internal quotes omitted). Constitutionally ineffective assistance of counsel also constitutes cause, but any attorney error short of that will not excuse procedural default. *Id.* at 494.

The mere fact that a petitioner is *pro se* or lacks knowledge of the law is insufficient to satisfy the cause prong. That is, "[w]hen a pro se petitioner is able to apply for post-conviction relief to a state court, the petitioner must be held accountable for failure to timely pursue his remedy to the state supreme court." *Hughes v. Idaho State Board Of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding petitioner's claims of illiteracy and lack of help in appealing post-conviction petition, though unfortunate, to be insufficient to meet cause standard); *Boyd*, 147 F.3d at 1126-27. Once a petitioner establishes cause, he must show "'actual prejudice'

REPORT AND RECOMMENDATION - 17

resulting from the errors of which he complains." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)). Such prejudice exists if the alleged errors worked to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original).

In the alternative, a *habeas corpus* petition may be granted without a showing of cause in those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 499 U.S. at 494; *Murray*, 477 U.S. at 495-96.

Mr. Nixon has made no showing that some objective factor external to his defense prevented him from complying with Washington's procedural bar rule. Because Mr. Nixon "cannot establish any reason, external to him, to excuse his procedural default," this Court need not address the issue of actual prejudice." *Boyd*, 147 F.3d at 1127; *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991). Furthermore, because Mr. Nixon does not present new evidence of actual innocence, this is not the kind of extraordinary instance where the petition should be granted despite the absence of a showing of cause. *McCleskey*, 499 U.S. at 494; *Murray*, 477 U.S. at 495-96. See also, *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995) ("The exception is available only where the petitioner 'supplements his constitutional claim with a colorable showing of factual innocence.'")

Mr. Nixon has not provided the Court with any evidence of cause and prejudice or a fundamental miscarriage of justice. Because he cannot excuse his procedural default, his first habeas claim alleging a due process violation based on the trial court's jury instructions is not cognizable in this federal habeas corpus proceeding.

REPORT AND RECOMMENDATION - 18

1

In summary, that portion of Mr. Nixon's first claim, in which he alleges a due process

2

violation based on confusing jury instructions, was not fully and fairly presented to the

3

Washington Court of Appeals and it is, therefore, unexhausted.  Mr. Nixon is also now

4

procedurally barred from returning to the Washington state courts to present his unexhausted

5

claims.  Because Mr. Nixon is now procedurally barred, this Court may proceed to address his

6

remaining claims on the merit.

7

**2.    Review on the Merits – Claim One - Lack of Jury Unanimity**

8

Respondent does not dispute that Mr. Nixon has exhausted that part of his first habeas

9

claim in which he challenges jury unanimity.  *See* Dkt. 14, p. 9.  The Washington Court of

10

Appeals provided the following summary regarding Mr. Nixon's claim on the issue of jury

11

unanimity:

12

> The superior court polled the jury when it returned its verdicts.  TRP 261-
> 66.  The verdicts were unanimous.  TRP 261-66.  Before sentencing, Petitioner's
> lawyer moved for a new trial only on the firearm enhancement.  SRP [2] 3-8.  She
> explained that three of the jurors misunderstood the court's instructions, believed
> the enhancement vote had to be unanimous, and would have voted "no" if they
> had known they could reject the enhancement with a divided vote.[3]  SRP 4.  The
> prosecutor confirmed that at least one juror said he or she would have voted
> differently had the juror understood the law.  SRP 5-6, 7.  Petitioner's lawyer
> sought new trial based on the theory that this misunderstanding affected the jury's
> verdict.  She did not challenge the superior court's instructions or the court's
> response to a jury question regarding the firearm enhancement special verdict
> form.  The trial court denied the motion.  SRP 8.

13

14

15

16

17

18

19

20

21

Dkt. 15, Exh. 10, p. 4.

22

In this habeas petition, Mr. Nixon similarly argues that Mr. Smith, a J.A., was with three

23

jurors who stated that they did not understand that they could have said that Mr. Nixon was not

24

armed with a weapon while he was committing the crime of manufacturing methamphetamine.

25

Dkt. 3-2, p. 4.  The prosecutor stated at sentencing that one juror said he or she "misunderstood

26

REPORT AND RECOMMENDATION - 19

the law.  Had I understood the law, I would have found differently on this particular question."

*Id*.

As noted above, when dismissing Mr. Nixon's personal restraint petition, the Washington Court of Appeals determined the following regarding that part of Mr. Nixon's claim alleging that the jury's confusion resulted in a non-unanimous verdict:

> Petitioner first argues that the jury did not return a unanimous firearm enhancement verdict.  But the verdict was unanimous.  TRP 261-66.  In substance, however, Petitioner appears to be challenging the verdict itself based on the post-trial statements of individual jurors about how and why they voted "yes" on the enhancement special verdict.  That is, he is now raising the juror misconduct argument that his lawyer unsuccessfully made in the superior court. And similarly, **Petitioner does not challenge the court's original or supplemental instructions regarding the firearm enhancement, and neither party has provided those instructions to us.**
>
> But Petitioner cannot impeach or challenge the enhancement verdict by using the jurors' statements about the reasons and thought processes that led them to vote "yes" instead of "no"; the reasoning of the jurors inheres in the verdict and cannot be used to challenge that verdict.  *See, e.g., State v. Ng*, 110 Wn.2d 32, 43-44, 750 P.2d 632 (1988).  And specifically, "any evidence that a juror misunderstood or failed to follow the court's instructions inheres in the verdict and may not be considered."  *State v. Rooth*, 129 Wn. App. 761, 722, 121 P.3d 755 (2005); *Accord State v. Young*, 48 Wn. App. 406, 414, 739 P.2d 1170 (1987); *see Ng*, 110 Wn.2d at 43-44.  This ground lacks merit.

Dkt. 15, Exh. 10, pp. 4-5 [emphasis added].

The Washington Supreme Court Commissioner agreed that the jurors' reasoning inheres in the verdict and cannot be used to challenge it:

> Mr. Nixon first contends the firearm special verdict is invalid because some of the jurors expressed confusion about whether unanimity was required to reject the enhancement.  But the final verdict in favor of the enhancement was unanimous.  The jurors' reasoning inheres in that verdict and cannot be used to challenge it.  *State v. Ng*, 110 Wn.2d 32, 43-44, 750 P.2d 632 (1988); *State v. Rooth*, 129 Wn. App. 761, 772, 121 P.3d 755 (2005).

Dkt. 15, Exh. 12, p. 1.

REPORT AND RECOMMENDATION - 20

As noted by Respondent, in order to obtain federal habeas relief as to this claim, Mr. Nixon must show that the decisions by the Washington state courts were contrary to, or an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court. This he has not done.

It is well settled that a jury does not have to give reasons for its verdict. *Barzelis v. Kulikowski*, 418 F.2d 869 (9th Cir. 1969). It is equally clear that once a verdict has been returned neither the Court nor the parties should inquire into the reasoning process or motivation behind the verdict. *Moores v. Navitrade A. A. of Panama*, 94 F.R.D. 340, 342 (D.Me. 1982); *Roy v. Star Chopper Co., Inc.*, 584 F.2d 1124, 1136 (1st Cir. 1978). This is true even when such information is volunteered by one or more members of the jury. *Comeracki v. Humble Oil Co.*, 443 F.2d 1245, 1247 (3rd Cir. 1971); *Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir. 1972).

As a general rule, a jury may not be questioned as to matters which "essentially inhere in the verdict itself. *Hyde v. United States*, 225 U.S. 347, 384 (1912). Such matters include "both 'the mental' process of any juror or of the jury in arriving at a verdict,' … and the method by which the verdict is reached." *Government of Virgin Isaldns v. Gerreau*, 523 F.2d 140, 149 (3rd Cir. 1975), *cert. denied*, 424 U.S. 917 [citations omitted].

The Court of Appeals for the Ninth Circuit disfavors post-verdict interrogation of jurors, and allows such interrogation in limited circumstances:

> In the federal court system, it has recently been stated that neither a trial court nor an appellate court has the authority to inquire into the jury's decisional processes, even when information pertaining to the deliberations is volunteered by one of the jurors. [Citation omitted.] Moreover, this court has held, in a federal case, that it is improper and unethical for lawyers to interview jurors to discover what was the course of deliberation of a trial jury. *Northern Pacific Railway Co. v. Mely*, 219 F.2d 199, 202 (9th Cir.1954).

*Smith v. Cupp*, 457 F.2d 1098, 1100 (9th Cir.1972), *cert. denied*, 409 U.S. 880, 93 S.Ct. 208, 34 L.Ed.2d 135 (1972).  The *Smith* court stated further, "there is no federal constitutional problem involved in the denial of a motion to interrogate jurors where, as here, there has been no specific claim of jury misconduct."  *Id.*

In *United States v. Stacey*, 475 F.2d 1119 (9th Cir.1973), defendant's counsel met with three of the jurors within twenty minutes after the verdict was returned, and was allegedly told that the jury would have acquitted the defendant if it had known that intent to defraud was an element of the charged offense. Counsel requested leave to depose jurors regarding their understanding of the court's instructions. The *Stacey* court stated,

> After a verdict is returned a juror will not be heard to impeach the verdict when his testimony concerns his misunderstanding of the court's instructions. *Walker v. United States*, 298 F.2d 217, 226 (9th Cir.1962). This rule does not violate a defendant's constitutional rights. [Citation.] ... "The reason for a rule barring a juror from testifying concerning his own mental processes-frankness and freedom of discussion in the jury room, [Citation]-applies with equal force to testimony by other jurors concerning objective manifestations of those processes."

The court further indicated in a footnote that its holding was required by *Smith v. Cupp, supra*, because the facts alleged by defendant's counsel did not demonstrate any jury misconduct.

In *Traver v. Meshriy*, 627 F.2d 934, 941 (9th Cir.1980), counsel for both sides interviewed individual jurors shortly after the jury announced its verdict. The defendants moved for judgment notwithstanding the verdict or a new trial, claiming that defense counsel was told that the jury verdict was not unanimous. The trial court refused the defendants' request to have the jurors recalled for a hearing on whether the verdict was unanimous, and the Ninth Circuit affirmed. The Ninth Circuit concluded that the trial court would have erred had it permitted inquiry into the jurors' deliberations and decision, by affidavits or otherwise, and stated:

> Because a verdict may not be impeached on the basis of the jury's internal deliberations or the manner in which it arrived at its verdict, the practice of

REPORT AND RECOMMENDATION - 22

counsel in propounding questions on these subjects to jurors after trial should be discouraged.

Once a verdict has been delivered and accepted in open court, and the jury is polled and discharged, jurors may not claim that their assent was mistaken or unwilling. [Citation]. Attacks on jury unanimity such as the one attempted here are also inappropriate after the jurors have assented to the verdict in a poll in open court. *United States v. Weiner*, 578 F.2d 757 (9th Cir.), cert. denied, 439 U.S. 981, 99 S.Ct. 568, 58 L.Ed.2d 651 (1978).

*Traver v. Meshriy*, 627 F.2d at 941.

The *Traver* court also cited to Rule 606(b)[4], and held that none of the defendants' allegations concerned extraneous prejudicial information or any outside influence that might have affected the deliberations.

Because the decisions by the Washington Court of Appeals and Washington Supreme Court regarding Mr. Nixon's first ground for relief relating to his claim that the jury verdict was not unanimous were not contrary to or an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court, Mr. Nixon is not entitled to federal habeas corpus relief regarding that claim.

---

[4] Fed.R.Evid. 606(b) states: Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon that or any other juror's mind or emotions as influencing the juror to assent to or dissent from the verdict or indictment or concerning the juror's mental processes in connection therewith. But a juror may testify about (1) whether extraneous prejudicial information was improperly brought to the jury's attention, (2) whether any outside influence was improperly brought to bear upon any juror, or (3) whether there was a mistake in entering the verdict onto the verdict form. A juror's affidavit or evidence of any statement by the juror may not be received on a matter about which the juror would be precluded from testifying.

*See also Note to Subdivision (b)*: Under the federal decisions the central focus has been upon insulation of the manner in which the jury reached its verdict, and this protection extends to each of the components of deliberation, including arguments, statements, discussions, mental and emotional reactions, votes, and any other feature of the process. Thus testimony or affidavits of jurors have been held incompetent to show a compromise verdict. *Hyde v. United States*, 225 U.S. 347, 382 (1912); a quotient verdict, *McDonald v. Pless*, 238 U.S. 264 (1915); speculation as to insurance coverage. *Holden v. Porter*, 405 F.2d 878 (10th Cir. 1969); *Farmers Coop. Elev. Ass'n v. Strand*, 382 F.2d 224, 230 (8th Cir. 1967), cert. denied 389 U.S. 1014; misinterpretation of instructions, *Farmers Coop. Elev. Ass'n v. Strand*, supra; mistake in returning verdict, *United States v. Chereton*, 309 F.2d 197 (6th Cir. 1962); interpretation of guilty plea by one defendant as implicating others, *United States v. Crosby*, 294 F.2d 928, 949 (2d Cir. 1961).

REPORT AND RECOMMENDATION - 23

**B.  SECOND CLAIM - FIREARM ENHANCEMENT**

In his second ground for relief, Mr. Nixon argues that there was insufficient evidence to impose a firearm enhancement because he was not "armed" within the meaning of RCW 9.94A.602, which provides that a person is armed if a weapon is easily accessible and readily available for "use" whether for offensive or defensive purposes.  Dkt. 3, p. 6; Dkt. 3-2, p. 6.

When evaluating a claim of insufficiency of the evidence to support a conviction, the question is not whether the Court itself believes the evidence establishes guilt. "Instead, the relevant question is whether . . . any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979) (emphasis original). The Court must "view the record as a whole in the light most favorable to the prosecution." *Gordon v. Duran*, 895 F.2d 610, 612 (9th Cir.), cert. denied, 489 U.S. 1077 (1990).  As stated by the United States Supreme Court:

> [T]he prosecution need not affirmatively "rule out every hypothesis except that of guilt," ... and ... a reviewing court "faced with a record of historical facts that supports conflicting inferences must presume-even if it does not affirmatively appear in the record-that the trier of fact resolved any such conflicts in favor of the prosecution, and must defer to that resolution."

*Wright v. West*, 505 U.S. 277, 296, 112 S.Ct. 2482, 120 L.Ed.2d 225 (1992) (quoting *Jackson*, 433 U.S. at 319, 326).

The Court's review is limited to "record evidence." *Herrera v. Collins*, 113 S. Ct. 853, 861 (1993).  Review is sharply limited, and the Court owes great deference to the trier of fact. *Wright*, 112 S. Ct. at 2492.  A sufficiency of evidence review is undertaken with reference to the elements of the criminal offense as set forth by state law. *Jackson*, 443 U.S. at 324 n. 16.

Mr. Nixon argues imposition of the firearm enhancement was improper because the weapon was not easily accessible or readily available to him at the manufacturing site because it

REPORT AND RECOMMENDATION - 24

was in the bedroom.  Dkt. 3-2, pp. 4-5.  He also argues that the state did not present any evidence that the weapon was ever used at the manufacturing site.  *Id*., p. 4.   Mr. Nixon also argues that the firearm was not a defensive type weapon, but a recreational type weapon.  Dkt. 3, p. 6.

The evidence reflects that the police found a loaded rifle and a loaded shotgun in the bedroom of Mr. Nixon's small trailer.  Dkt. 15, Exh. 17 (Verbatim Report of Proceedings of October 12, 2004, Volume I, pp. 44-46, 88-89).  The Washington Court of Appeals also noted the following pertinent facts regarding the manufacturing evidence found at Mr. Nixon's trailer:

> Petitioner's travel trailer was only 20 to 22 feet long, containing small bedroom, kitchen, and living room areas.  TRP[1] 82.  In the living room, the police found a box of medicine containing ephedrine or pseudoephedrine, the essential ingredient for making methamphetamine.  TRP 49, 91, 121-26.  In a black bag located in the living room, the police found a plastic bag containing 6.2 grams of pseudoephedrine extracted from pills; such extraction is the first step in the manufacturing process.  TRP 82-83, 121-26, 127-29.  Also in the living room, the police discovered 47 small round lithium batteries stored in a plastic bag; lithium is a necessary ingredient for the manufacturing method used in this case.  TRP 46-47, 61-62, 90-91, 121-26, 129-30, 137-38.  The police also found coffee filters in the living room that had been used to filter methamphetamine manufactured using lithium and ammonia.  TRP 42-43, 86-88, 129-30.  From either the kitchen or the living room the police seized an empty lye bottle; lye is also used to make methamphetamine.  TRP 50, 92, 135.  Also inside the trailer, the police found a balance scale and a digital gram scale, both commonly used to measure precursor ingredients or finished methamphetamine; the police found methamphetamine residue on at least one of them.  TRP 41-42, 50, 86, 91, 97.  Finally, the police found a loaded rifle and a loaded shotgun in the bedroom, leaning against the wall next to the bed.  TRP 44-46, 88-89.

> Outside the trailer, the police found other manufacturing-related items.  Inside a cooler located directly under Petitioner's trailer, dry ice was being used to cool the extraction of ammonia fertilizer; the reaction was still happening.  TRP 52-54, 94-95, 130-34, 169-72.  Ammonia was another necessary ingredient.  TRP 121-26, 129-30, 133-34.  The police also found a large tote box containing many more manufacturing ingredients and equipment items near or under a horse trailer located about 50 to 60 feet from Petitioner's trailer.  TRP 50-51, 54-62, 68-69, 93-93 [sic], 130, 135-42, 172.

Dkt. 15, Exh. 10, pp. 2-3.

REPORT AND RECOMMENDATION - 25

The Washington Court of Appeals determined that there was sufficient evidence to prove the firearm enhancement as follows:

> Petitioner next argues that the evidence was insufficient to prove he was armed with a firearm when he manufactured methamphetamine. Evidence is sufficient when a rational trier of fact, viewing the evidence in the light most favorable to the state, could find the State had proved the challenged elements beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 220-22, 616 P.2d 628 (1980). We must draw "all reasonable inferences from the evidence . . . in favor of the State and" interpret them "most strongly against the defendant." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992). When a defendant claims insufficient evidence, we "must defer to the trier of fact on issues of conflicting testimony, credibility of witnesses, and the persuasiveness of the evidence." *State v. Fiser*, 99 Wn. App. 714, 719, 995 P.2d 107 (2000). Circumstantial evidence is as reliable as direct eyewitness evidence. *Fiser*, 99 Wn. App. At 718.
>
> The Washington State Supreme Court has recently summarized what it means to be armed with a weapon:
>
> > "A person is 'armed' if a weapon is easily accessible and readily available for use, either for offensive or defensive purposes" and there is a connection between the defendant, the weapon, and the crime. However, the connection between the defendant, the weapon, and the crime is not an element the State must explicitly plead and prove. Instead, it is essentially definitional.
>
> *State v. Easterlin*, 159 Wash.2d 203, 208-09, 149 P.3d 366 (2006) (citations omitted).[6] The relevant time-period for assessing a defendant's purpose for possessing the weapon or the connection between the weapon and the charged crime is not limited to the moment of police contact. *See State v. O'Neal*, 159 Wn.2d 500, 504-05, 150 P.3d 1121 (2007); *State v. Gurske*, 155 Wn.2d 134, 139, 118 P.3d 333 (2005).
>
> Petitioner urges that the jury received insufficient evidence to find him armed while he committed the crime because the evidence of manufacturing was found outside of his trailer, not inside with the guns. As the summary of evidence above demonstrates, Petitioner is wrong. Although the police found a large quantity of manufacturing evidence outside Petitioner's trailer, they also found evidence of essential manufacturing activity inside the trailer, and the actively reacting ammonia generator was directly under Petitioner's trailer. The trailer was small and the guns were loaded: a rational jury could find that they were "easily accessible and readily available for use." Given Petitioner's testimony about the way he had acquired some of his manufacturing components and the competitive nature of the neighboring manufacturing operations, the evidence was sufficient to allow a rational trier of fact to find beyond a reasonable doubt that Petitioner

possessed the guns to protect his manufacturing operation from the other cooks and users. While relevant to the jury's decision, the evidence that Petitioner made no effort to use the guns against the police is not dispositive. *See O'Neal*, 159 Wn.2d 500- 504-05.

In his reply brief, Petitioner contends that the State never proved the guns were in working order. Generally, we will not consider new claims raised in a reply brief. *See* RAP 10.3(c); RAP 16.10(d); *Cowiche Canyon Conservancy v. Bosley*, 118 Wn.2d 801, 809, 828 P.2d 549 (1992); *State v. Tjeerdsma*, 104 Wn. App. 878, 886, 17 P.3d 678 (2001). We note, however, that the record appears to reflect that the parties stipulated that at least one of the guns could fire a bullet. TRP 153, 229.

Dkt. 15, Exh. 10 at 5-7.

As to Mr. Nixon's second claim, the Washington Supreme Court Commissioner similarly stated the following:

Mr. Nixon further argues that the evidence was insufficient to support the firearm special verdict. The record shows the police found two loaded firearms (a rifle and a shotgun) near the bed in Mr. Nixon's small travel trailer. Mr. Nixon stipulated to a testing report showing that the shotgun was operational. There was evidence of drug manufacturing activity inside and outside of the trailer. The evidence viewed in a light most favorable to the State was sufficient to find that the shotgun was easily accessible and readily available for Mr. Nixon's use in defending his drug manufacturing activities. *See State v. Easterlin*, 159 Wn.2d 203, 208-09, 149 P.3d 366 (2006); *State v. O'Neal*, 159 Wn.2d 500, 504-05, 150 P.3d 1121 (2007).

[[6] Although not required to do so, the trial court here apparently instructed the jury on the definitional nexus requirement. TRP 188. (Footnote by court.)]

Exhibit 12 at 1-2.

Mr. Nixon must demonstrate that, after viewing the evidence and all reasonable inferences therefrom in the light most favorable to the State, no rational trier of fact could have found that he was armed with an actual firearm. *See State v. Salinas*, 119 Wash.2d 192, 201, 829 P.2d 1068 (1992). He does not make this showing, but relies on his argument that there is no proof that the weapons were actually used at the manufacturing site. Dkt. 19, p. 4.

REPORT AND RECOMMENDATION - 27

Respondent has provided this Court with a complete transcript of Petitioner's trial. Dkt. 17. After reviewing that transcript in the light most favorable to the government and resolving all credibility issues in favor of the verdict, the undersigned cannot say that no rational trier of fact could not have found the essential elements of the crime alleged beyond a reasonable doubt. This Court's review of the record confirms what the Washington courts noted, *i.e.*, that the police found a loaded rifle and a loaded shotgun in the bedroom of Mr. Nixon's trailer (Dkt. 15, Exh. 17, pp. 44-46, 88-89); that Mr. Nixon's trailer was only 20 to 22 feet long (*Id.*, p. 82), there was evidence of manufacturing activities (including pills, lithium batteries, coffee filters, ammonia, lye bottle, scales) found inside Mr. Nixon's trailer, (*Id*, pp. 41, 42-43, 49, 50, 86-88, 91, 92, 97, 121-26, 46-47, 61-62, 90-91, 129-30, 127-29, 135, 137-38) and under his trailer (*Id.*, pp. 52-54, 94-95, 130-34, 169-72).

Thus, contrary to what Mr. Nixon contends, there was evidence of drug manufacturing activity inside, as well as outside of Mr. Nixon's trailer. Mr. Nixon also states that his "firearm was not defensive type but was of the recreational type." Dkt. 3, p. 6. However, it is unclear why the recreational nature of Mr. Nixon's weapon is relevant when the evidence at trial reflects that the firearm was easily accessible and readily available for Mr. Nixon's use in defending his drug manufacturing activities.

The undersigned finds the state courts' decisions on this issue were neither "contrary to, or involved an unreasonable application of, clearly established federal law," nor "based on an unreasonable determination of the facts in light of the evidence presented." 28 U.S.C. § 2254(d). Therefore, Mr. Nixon is not entitled to federal habeas corpus relief regarding his claim that there was insufficient evidence to impose the firearm enhancement and the undersigned recommends that this claim for relief be denied.

**C.     THIRD CLAIM – SENTENCE EXCEEDED STATUTORY MAXIMUM**

In his third claim for relief, Mr. Nixon claims that the trial court violated his constitutional rights by imposing a sentence exceeding the standard range and the statutory maximum and that he was not informed that he was facing an exceptional sentence. Dkt. 3, p. 8. Mr. Nixon argues that the trial court improperly applied RCW 69.50.435(1) to double his statutory maximum term and a sentence enhancement for the same crime. Dkt. 3-2, p. 7.

The misapplication of state law results in a due process violation only if a sentence is arbitrary and capricious. *Richmond v. Lewis*, 506 U.S. 40, 50 (1992). The Ninth Circuit has refused to consider state law errors in the application of state sentencing law. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *Hendricks v. Zenon*, 993 F.2d 664, 674 (9th Cir. 1993); *Johnson v. Arizona*, 462 F.2d 1352, 1353-54 (9th Cir. 1972). Relief is only available when the sentencing is arbitrary or fundamentally unfair. *Newton v. Superior Court*, 803 F.2d 1051, 1055 (9th Cir. 1986).

State courts are the ultimate expositors of their own laws. *Mullaney v. Wilbur*, 421 U.S.684, 691, n.11 (1975). A state court's refusal to reverse a sentence on state law grounds is not reviewable by a federal court upon habeas review. *Hendricks v. Zenon*, 993 F.2d at 674. More generally, federal habeas courts will not review claims involving errors of state law in the imposition of state criminal sentences. *Christian v. Rhode*, 41 F.3d 461, 469 (9th Cir. 1994); *Miller v. Vasquez*, 868 F.2d 1116, (9th Cir. 1989), cert. denied, 111 S. Ct. 1591 (1991).

In 2000, the Supreme Court held that "[o]ther than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt." *Apprendi v. New Jersey*, 530U.S. at 490. In *Blakely v. Washington*, 542 U.S. 296 (2004) the Court extended *Apprendi,* holding for

REPORT AND RECOMMENDATION - 29

the first time that the "statutory maximum" for purposes of an *Apprendi* analysis includes not only the statutory maximum for an offense, but also the top end of a statutorily established standard range for the offense. *Blakely*, 542 U.S. at 303-04.

Respondent argues that Mr. Nixon's *Blakely* claim fails on its face, because he fails to recognize that the sentence enhancements imposed by the trial court increased his standard range. See RCW 9.94A.533(3)(b), .533(6). Therefore, his standard range for his conviction for manufacturing methamphetamine was actually 128 to 160 months, not 68 to 100 months. Dkt. 15, Exh. 1, p. 2 at para. 2.3 (Sentencing Data).

The Washington Court of Appeals concluded the same when adjudicating Mr. Nixon's third claim:

> Manufacturing methamphetamine is a Class B felony, ordinarily carrying a maximum of 120 months imprisonment. RCW 69.50.401(2)(b). On direct appeal, we held that the operation of RCW 69.50.435(1) doubled Petitioner's maximum sentence to 240 months. We thus held that Petitioner's 128 month sentence did not exceed the statutory maximum. Petitioner now contends that *Blakely* made the top of the unenhanced standard range the absolute statutory maximum for all purposes. He thus contends that when the superior court imposed the 36 month firearm enhancement, the 24 month school bus stop zone enhancement, and the 9 to 12 month community custody term, it imposed a sentence above the statutory maximum of 100 months. Petitioner is wrong.

> First, Petitioner's argument essentially defeats itself. Petitioner claims the statutory maximum is the top of the standard range. But by statute, the two enhancements *increased Petitioner's standard range. See* RCW 9.94A.533(3)(b), .533(6). Thus, Petitioner's standard range for manufacturing methamphetamine was actually 128 to 160 months, not 68 to 100. By definition, the enhancements cannot exceed the standard range; they *change* it.[7] So even if Petitioner's statutory maximum was defined by the top of his standard range, his sentence of 128 months plus 9 to 12 months of community custody would not exceed the top of his range.

> Second, Petitioner misunderstands *Blakely*. *Blakely* did not change the maximum sentences established by Washington's legislature. Instead, after *Blakely*, "any fact other than that of a prior conviction, which increased the applicable punishment, must be found by a jury beyond a reasonable doubt (unless it is stipulated to by the defendant or the defendant waives his right to a

REPORT AND RECOMMENDATION - 30

jury finding)." *State v. Hughes*, 154 Wn.2d 118, 126, 110 P.3d 192 (2005), *overruled on other ground by Washington v. Recuenco*, _____ U.S. _____, 126 S. Ct. 2546, 2552-53, 165 L. Ed. 2d 466 (2006). *Blakely* clarified that "the 'statutory maximum' for *Apprendi*[8] purposes is the maximum sentence a judge may impose *solely on the basis of the facts reflected in the jury verdict or admitted by the defendant*." *Blakely*, 542 U.S. at 303 (underlining added).

The two enhancements and the community custody term make Petitioner's sentence longer than the top of his original 100 month standard range. But that additional punishment is based on the very same facts the jury found, *not* additional facts. Once the jury rendered its special verdict finding Petitioner was armed with a gun while manufacturing methamphetamine, Washington statutes required the superior court to impose an additional 36 months in prison. RCW 9.94A.533(3)(b). Once the jury rendered its special verdict finding Petitioner manufactured methamphetamine within 1000 feet of a school bus stop, Washington statutes required the superior court to impose an additional 24 months in prison. RCW 9.94A.533(6); 69.50.435 (1)(c). And as noted above, Washington statutes required the superior court to impose a 9 to 12 months community custody term *because* the jury convicted Petitioner of a drug offense. The superior court found no additional facts, and its sentence did not exceed the maximum if could impose based solely on the jury's verdicts.

The sentence imposed was based entirely on jury fact-finding, not judicial fact-finding. It does not exceed the 240 month maximum.

[7] If the increased standard range exceeds the actual (separately defined) statutory maximum, then that statutory maximum becomes the presumptive sentence, the only sentence within the standard range. *See* RCW 9.94A.533(3)(g), .599. [Footnote by the court.]

[8] *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). [Footnote by the court.]

Dkt. 15, Exh. 10, pp. 8-9.

The Washington Supreme Court Commissioner found the following when adjudicating

Mr. Nixon's third claim:

Mr. Nixon also claims his sentence for manufacturing methamphetamine was excessive in light of *Blakely v. Washington*, 542 U.S. 296, 124 S. Ct. 2531, 159 L. Ed. 2d 403 (2004), and *Apprendi v. New Jersey*, 530 U.S. 466, 120 S. Ct. 2348, 147 L. Ed. 2d 435 (2000). Because of a 24-month school bus stop enhancement and a 36-month firearm enhancement, Mr. Nixon's standard sentencing range was increased from 68 to 100 months to 128 to 160 months. The

REPORT AND RECOMMENDATION - 31

trial court imposed 128 months. Ordinarily a class B felony like manufacturing methamphetamine is subject to a statutory maximum of 120 months. RCW 9A.20.021(1)(b). But because Mr. Nixon committed the crime within 1000 feet of a school bus stop, the statutory maximum doubled to 240 months. RCW 69.50.435(1)(c). The court did not, as Mr. Nixon suggests, rely on the doubling provision for subsequent convictions under RCW 69.50.408. Consequently, Mr. Nixon's 128-month sentence exceeded neither the top of his standard sentencing range nor the top of his statutory maximum.

Dkt. 15, Exh. 12 at 2.

The Washington Court of Appeals properly concluded that the two enhancements and the community custody term did not exceed Mr. Nixon's original 100 month standard sentence range, but changed it because the additional punishment was based entirely on jury-fact finding that he was armed with a gun while manufacturing methamphetamine within 1000 feet of a school bus stop. *See*, Dkt. 15, Exh. 10, p. 8.

Because the decisions by the Washington Court of Appeals and Washington Supreme Court as to Mr. Nixon's third claim were neither contrary to nor an unreasonable application of clearly established federal law, as determined by the U.S. Supreme Court, he is not entitled to federal habeas relief on his third claim for relief and the undersigned recommends that the Court deny this claim.

## VII. CONCLUSION

Based on the foregoing discussion, the undersigned recommends that Mr. Nixon's habeas petition should be **denied**, and this action **dismissed**. No evidentiary hearing is required as the record conclusively shows that Petitioner is not entitled to relief.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections. See also Fed. R. Civ. P. 6. Failure to file objections will result in a waiver of those objections for purposes of appeal. *Thomas v. Arn*, 474 U.S. 140 (1985).

REPORT AND RECOMMENDATION - 32

Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **August 21, 2009**, as noted in the caption.

DATED at Tacoma, Washington this 31st day of July, 2009.


Karen L. Strombom
United States Magistrate Judge